ORIGINAL

FILED
AUG 6 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

REGIONSAIR Inc.,

Plaintiff,

v.

No. 07-594 C

THE UNITED STATES,

Defendant.

**COMPLAINT**

Plaintiff, REGIONSAIR, Inc., (hereinafter referred to as RegionsAir or Plaintiff) by and through its undersigned attorney, complains of the above named defendant, The United States (via Federal Aviation Administration - FAA) and demonstrates the following:

**NATURE OF THIS ACTION**

1. This is an action for breach of contract, breach of duty to contract in good faith, breach of duty of good faith and fair dealing, and 5th Amendment taking of property without just compensation. RegionsAir's claims are based on Government representations and written contract with the United States, Federal Aviation Administration, under which the Plaintiff agreed to ensure its pilots were trained and qualified to operate its aircraft and that its check airmen were qualified to perform line checks. The FAA agreed to commit sufficient resources so that Plaintiff could comply with the terms of the agreement. The contract (hereinafter refereed to as "Consent Agreement" or "contract") was not entered into in good faith in that defendant caused the Plaintiff's agents to sign the Consent Agreement under duress. Further the Consent Agreement was a

#1

pretense to terminate Plaintiff's air carrier operations. Notwithstanding the foregoing, Plaintiff complied with the Consent Agreement by retraining its pilots and ensuring that it had sufficient qualified check airmen to perform line checks. The United States Government breached the contract by unilaterally canceling the contract by failing to commit any resources to ensure Plaintiff's compliance. Finally, the United States Government, under the cloak of purported non-compliance with the aforementioned Consent Agreement, cancelled Plaintiff's air carrier operating certificate thereby taking Plaintiff's property without just compensation.

2. For relief, RegionsAir seeks relief requesting this court to: find that the United States Government entered into a contract in bad faith; declare the contract to have no effect; to declare the United States Government to have breached the contract and that Plaintiff complied with the contract; and that injunctive relief be granted. Additionally, for relief, RegionsAir seeks damages or restitution to compensate it in the sum of $11,650,000.00 plus interest and attorney's fees in the amount to be proven, as a result of The United States Government's wrongful acts.

## SUMMARY OF CLAIMS

3. The United States Government's absolute commitment to close RegionAir's air carrier operations, via its statements and actions breached its duty to contract in good faith, thereby rendering the Consent Agreement as nothing other than a pretense to terminate and otherwise cancel Plaintiff's air carrier certificate.

4. The United States Government breached its duty of good faith and fair dealing when it coerced the Plaintiff's agents to enter into the Consent Agreement under duress.

5. The United States Government cancelled Plaintiff's air carrier certificate under the cloak of purported non-compliance with a Consent Agreement by Plaintiff when in fact the Plaintiff had complied with the terms of the contract.

6. The United States Government breached the contract by failing to commit even one person to ensure Plaintiff could comply with the terms, when the contract required the FAA to commit sufficient resources for compliance.

7. The United States Government illegally cancelled the Plaintiff's air carrier certificate thereby taking Plaintiff's property without just compensation.

**PARTIES**

8. Plaintiff, RegionsAir, is, at all times pertinent hereto, is a corporation organized under the laws of Tennessee with its principle place of business located in Smyrna, Tennessee. Plaintiff was a certified regional air carrier conducting passenger carrying operations throughout the mid-west United States.

9 Defendant is the United States Government (hereinafter the "Government" or "Defendant" or "Federal Aviation Administration" or "FAA") named as Defendant in this action. At all times pertinent to the allegations set forth herein, the United States has acted through instrumentalities, agencies, duly authorized officers an employees, including, but not limited to, The United States Senate (via US Senator Richard Durbin); The Department of

Transportation (via Secretary of Transportation); the FAA's Southern Region Headquarters including the Flight Standards Division and Legal Counsel; and the FAA's Nashville Flight Standards District Office.

## JURISDICTION AND VENUE and APPLICABLE STATUTES

10. This action arises under and is filed pursuant to 41 USC 601 *et seq;* 5 USC 706; 5 USC 706(2)(a) and this court has jurisdiction under 28 USC 1491(a)(1) and (b)(2).

## FACTS

Anticipatory Pre-Formation Breach of Contract via Pretense and Duress

11. Defendant US Government and Federal Aviation Administration are responsible for and mandated to regulate and enforce the Federal Aviation Regulations. The FAA is also directed to promote aviation and aviation safety within the public interest.

12. Plaintiff was certified by the Defendant's agents to conduct passenger carrying operations as described above.

13 The FAA approved and accepted Defendant's manuals and permitted flight operations to commence approximately 11 years ago. Plaintiff has carried passengers under its approved air carrier certificate for that 11 year period using the same approved programs including its approved pilot training program and its approved check airmen program. There is literally nothing that would distinguish Plaintiff's air carrier operations from the inception of the airline

to its approved operations conducted during and immediately prior to the FAA's latest inspections referenced below.

14. In February of 2007, United States Senator Richard Durbin embarked on campaign to close Plaintiff's air carrier operations. Senator Durbin lobbied American Airlines, The Secretary of Transportation and regional airports in pursuit of his goal of closing Plaintiff's business.

15. On the heels of Senator Durbin's lobbying efforts, on or about March 2 – 3, 2007, FAA inspectors at the local FAA, Flight Standards District Office requested Plaintiff to voluntarily cease operations, so that an inspection of its check airmen and pilot qualifications could be performed.

16. Shortly thereafter RegionsAir complied with all of the FAA's requests and re-trained all of its pilots and ensured that its check airmen were qualified. Plaintiff then re-commenced flight operations with the FAA's consent.

17. Despite the above approval to resume operations by the FAA, for unknown reasons on or about March 7-8, 2007, numerous FAA inspectors from the regional headquarters inspected Plaintiff's airline, including its aircraft, its maintenance program, its pilots operations and records and its operating and training manuals.

18. On or about March 9, 2007, Defendant's FAA regional inspectors demanded that Plaintiff cease its air carrier operations, and sign a Consent Agreement, but gave no specifics as to what was wrong or why Plaintiff should cease its operations.

19. The FAA's regional inspectors threatened employees at RegionsAir that the FAA would exercise its discretionary authority under Part 119 of the

Federal Aviation Regulations and preclude any of RegionsAir's required employees from future FAA approval at other airlines. Some of the employees were instructed that they would effectively be precluded from obtaining employment in aviation in the future if RegionsAir failed to sign the Consent Agreement. Mr. Douglas Caldwell was given approximately 15-45 minutes to sign the Consent Agreement without having the opportunity to review the Consent Agreement with others, including no reasonable opportunity to consult with counsel. Counsel for the air carrier at that time effectively indicated to the FAA's Flight Standards personnel that the his client was signing the Consent Agreement under duress.

20. The FAA through threats and intimidation coerced RegionsAir to enter into a Consent Agreement. Specifically, the FAA inspectors told the RegionsAir employees that the FAA would issue an emergency suspension against RegionsAir's operating certificate the "next day" if RegionsAir failed to sign the Consent Agreement. Management at RegionsAir literally believed that its certificate would be revoked the next day and that all required personnel would be permanently precluded from working in the aviation if they failed to comply with the FAA's demands.

21. Faced with this dilemma, officials at RegionsAir were forced and otherwise coerced into accepting the Consent Agreement.

22. Mr. Caldwell of RegionsAir signed the Consent Agreement under duress only after being coerced by the FAA. Mr. Caldwell signed the contract on behalf of the company only after the required principles of the company had been threatened with the loss of their immediate and future employment.

Specifically, the FAA inspectors threatened that the principles would never again be approved by the FAA to required airline positions.

23. Intimidated into believing that they would never be employed in aviation again, the principles of RegionsAir concurred and otherwise permitted, Mr. Caldwell to sign the Consent Agreement that allegedly voluntarily ceased RegionsAir's operations.

24. The US Government through its agents and instrumentalities entered into a contract with which it never intended to comply. The contract was a pretense to terminate Plaintiff's air carrier certification.

Compliance with Contract Agreement by Plaintiff

25. The Consent Agreement set out the obligations of both the FAA and RegionsAir. Plaintiff was to cease operations up to 120 days until it could ensure that:

a) RegionsAir's pilots were qualified;

b) RegionsAir's check airmen were qualified to administer line checks; and

c) RegionsAir met all other applicable Federal Aviation Regulations.

26. If RegionsAir did not fulfill its obligations under the Consent Agreement, then the FAA could cancel the air carrier certificate.

27. Within approximately 30 days RegionsAir had complied with all of the Federal Aviation Regulations. Further, RegionsAir complied with the other terms of the contract by ensuring that it had sufficient check airmen to administer line checks and by retraining all of its pilots. Later RegionsAir supplied new

names for the required personnel all of which occurred within the 120 day term of the Consent Agreement.

28. Despite the fact that RegionsAir had complied with all of its obligations of the Consent Agreement, the FAA failed to return its certificate as required by the Consent Agreement.

29. On or about July 1-3, 2007, agents for RegionsAir attempted to inform the FAA that it had complied with its obligations and submit final names of required personnel. Per the FAA's instructions, RegionsAir submitted a final plan to become operational. Notwithstanding that RegionsAir had complied with all of its obligations under the Consent Agreement, on July 10, 2007, the FAA cancelled Plaintiff's air carrier certificate under the cloak of purported non-compliance with the aforementioned Consent Agreement. A copy of the Consent Agreement and Letter dated July 10, 2007 are hereby incorporated into this Complaint by reference and attached as exhibits one and two.

Wrongful Breach of Contract by FAA

30. During the 120 day period in which the FAA was obligated to "assign sufficient resources" so that RegionsAir could demonstrate its compliance with Consent Agreement, the FAA failed to commit one inspector to RegionsAir's facility.

31. During the 120 day period, the FAA ignored RegionAir's attempts to satisfy the terms of the contract. Specifically, the FAA inspectors fialed to return phone calls, or respond to written correspondence by RegionsAir.

32. If RegionsAir was precluded from complying with the Consent Agreement, it was the direct result of the FAA's failure to commit adequate

resources to ensure compliance, or even respond to RegionsAir's attempts to satisfy its obligations pursuant to the Consent Agreement.

33. The Consent Agreement specifically stated that the FAA would commit sufficient resources (inspectors and support personnel) necessary for Plaintiff to comply with the terms of the Consent Agreement.

34. The FAA) has entered into substantially identical Consent Agreements with other air carriers in the past. In each instance, Defendant committed several FAA inspectors and support personnel so that the air carrier could comply with the terms of the Consent Agreement. In at least one instance, the FAA committed dozens of inspectors to the air carrier's facilities to ensure that the air carrier could comply with its respective Consent Agreement.

35. Defendant failed to commit even one inspector to ensure that Plaintiff could comply with the terms of the Consent Agreement.

5th Amendment Taking

36. The Federal Aviation Regulations outline exactly how the FAA is to proceed with the suspension or revocation of an air carrier's certificate. That process protects the Due Process rights of the air carrier, but does not include any language concerning consent agreements. The FAA has no authority permitting it to enter into consent agreements that effectively decertify an air carrier as did the FAA herein.

37. The FAA illegally compelled the Plaintiff to sign the Consent Agreement, and then based upon the purported failure of the air carrier to comply with the terms of the contract, cancelled the Plaintiff's air carrier operating certificate.

38. The cancellation of the Plaintiff's certificate was effectively a revocation and taking of the Plaintiff's air carrier certificate for which no compensation was given to Plaintiff.

39. Before the FAA may revoke an air carrier operating certificate it must comply with the Federal Aviation Regulations which set out a detailed process before a certificate may be cancelled or revoked.

40. The Federal Aviation Regulations require notice and hearing even if the certificate is revoked on an emergency basis. The hearing is adversarial trial type of hearing before neutral Administrative Law Judge from the National Transportation Safety Board.

41. The FAA failed to provide a hearing as required per its own rules, and failed to give any notice or opportunity to be heard, and consequently illegally seized Plaintiff's property interests in its air carrier certificate without any compensation as required by the 5th Amendment to the United States Constitution.

## COUNTS

### Count 1 Anticipatory Pre-Formation Breach of Contract

### (Unconscionability - Contract via Duress and Pretense)

42. Plaintiff re-alleges paragraphs 10 through 41. The above paragraphs specifically applicable to this count are set out in paragraph 11 through 24.

43. In view of Defendant FAA's enforcement of the illegal contract by canceling RegionsAir's air carrier operating certificate, there is an actual

controversy within the jurisdiction of this court. Declaratory relief will effectively adjudicate the rights of the parties.

44. The Consent Agreement was entered into by Plaintiff under duress.

45. The Consent Agreement was not negotiated in good faith by the US Government in that never intended to comply with the terms of the agreement. Specifically, the Consent Agreement was a mere pretense to cancel Plaintiff's air carrier certificate and its flight operations.

46. The cancellation of Plaintiff's air carrier certificate by the FAA will cause Plaintiff undue hardship and irreparable injury.

47. Plaintiff has no other adequate remedy at law.

48. Plaintiff requests this court to declare the Consent Agreement to have no effect since it was entered into by Plaintiff only after coercion and intimidation by Defendant's agents.

49. Plaintiff requests this court to restrain Defendant from canceling Plaintiff's air carrier certificate.

50. Pending a final hearing and determination of the court of this matter concerning money damages, a preliminary injunction should be issued restraining Defendant and agents from canceling the Plaintiff's air carrier certificate.

51. The court issue such other and further relief as it may deem necessary and proper.

**Count 2 Breach of Contract**

**(Compliance with Consent Agreement by Plaintiff)**

52. Plaintiff re-alleges paragraphs 10 through 41. The above paragraphs specifically applicable to this count are set out in paragraphs 25 through 29.

53. Alternative to count one above, this count is for declaratory judgment in a case of actual controversy pursuant to 28 USCA Section 2201, and to recognize the validity of a contract entered into by Plaintiff and Defendant.

54. The Consent Agreement set out the obligations of both the FAA and RegionsAir. Plaintiff was to cease operations for up to 120 days until it could ensure that:

a) RegionsAir's pilots were qualified;

b) RegionsAir's check airmen were qualified to administer line checks; and

c) RegionsAir met all other applicable Federal Aviation Regulations.

55. If RegionsAir did not fulfill its obligations under the Consent Agreement, then the FAA could cancel the air carrier certificate. Within approximately 30 days, RegionsAir had complied with all of the Federal Aviation Regulations. Further, RegionsAir complied with the other terms of the contract by ensuring that it has sufficient check airmen to administer line checks and by retraining all of its pilots. Later RegionsAir supplied new names for the required personnel all of which occurred within the 120 day term of the Consent Agreement.

56. Despite the fact that RegionsAir had complied with all of its obligations of the Consent Agreement, the FAA failed to return its certificate as required by the Consent Agreement.

57. On or about July 1-3, 2007, agents for RegionsAir attempted to inform the FAA that it had complied with its obligations and submit final names of required personnel. Per the FAA's instructions, RegionsAir submitted a final plan to become operational.

58. Notwithstanding that RegionsAir had complied with all of its obligations under the Consent Agreement, on July 10, 2007, the FAA cancelled Plaintiff's air carrier certificate under the cloak of purported non-compliance with the aforementioned Consent Agreement.

59. In view of Defendant FAA's cancellation of RegionsAir's air carrier operating certificate, there is an actual controversy within the jurisdiction of this court. Declaratory relief will effectively adjudicate the rights of the parties.

60. The cancellation of Plaintiff's air carrier certificate by the FAA will cause Plaintiff undue hardship and irreparable injury.

61. The cancellation of the abovementioned RegionsAir's air carrier certificate resulted from the FAA's purported belief that the Plaintiff failed to comply with its obligations under the aforementioned Consent Agreement. That Consent Agreement required Defendant to commit sufficient personnel so that Plaintiff could comply with its obligations under the Consent Agreement which Defendant failed to do.

62. Plaintiff has no other adequate remedy at law.

63. Plaintiff requests this court to declare that the Consent Agreement to have been breached by Defendant.

64. Pending a final hearing and determination of the court of this matter, a preliminary injunction should be issued restraining Defendant and its agents from canceling the Plaintiff's air carrier certificate.

**Count 3 Wrongful Breach of Contract by FAA**

65. Plaintiff re-alleges paragraphs 10 through 41. The above paragraphs specifically applicable to this count are set out in paragraphs 30 through 35.

66. Alternative to count one and two above, this count seeks declaratory judgment in a case of actual controversy pursuant to 28 USCA Section 2201, and to recognize the validity of a contract entered into by Plaintiff and Defendant.

67. Defendant has entered into consent agreements with other air carriers in the past. In each circumstance, Defendant committed numerous FAA inspectors and support personnel to ensure that the air carrier could comply with its obligations pursuant to its respective consent agreement.

68. Under the terms of the Consent Agreement, Defendant was to commit sufficient resources (inspectors and support personnel) necessary for Plaintiff to comply with the terms of the Consent Agreement.

69. Defendant failed to commit even one inspector to ensure that Plaintiff could comply with the terms of the Consent Agreement.

70. In view of Defendant FAA's wrongful breach of contract and consequent cancellation of RegionsAir's air carrier operating certificate, there is an actual controversy within the jurisdiction of this court. Declaratory relief will effectively adjudicate the rights of the parties.

71. The cancellation of Plaintiff's air carrier certificate by the FAA will cause Plaintiff undue hardship and irreparable injury.

72. The cancellation of the abovementioned RegionsAir's air carrier certificate resulted from the FAA's purported belief that the Plaintiff failed to comply with its obligations under the aforementioned Consent Agreement. That Consent Agreement required Defendant to commit sufficient personnel so that Plaintiff could comply with its obligations under the Consent Agreement which Defendant failed to do.

73. Plaintiff has no other adequate remedy at law.

74. Plaintiff requests this court to declare the Consent Agreement to have no effect.

75. Plaintiff requests this court to restrain Defendant from canceling Plaintiff's air carrier certificate.

76. Pending a final hearing and determination of the court of this matter, a preliminary injunction should be issued restraining Defendant and agents from canceling the Plaintiff's air carrier certificate.

77. The court issue such other and further relief as it may deem necessary and proper.

**Count 4 - 5th Amendment Taking**

78. Plaintiff re-alleges paragraphs 10 through 41. The above paragraphs specifically applicable to this count are set out in paragraphs 36 through 41.

79. Alternative to count one, two and three above, this count is for declaratory judgment in a case of actual controversy pursuant to the Taking Clause of the 5th Amendment to the United States Constitution.

80. The Federal Aviation Regulations outline exactly how the FAA is to proceed with the suspension or revocation of an air carrier's certificate. That process protects the Due Process rights of the air carrier, but does not include any language concerning consent agreements.

81. The FAA has no authority permitting it to enter into consent agreements that effectively decertify air carrier as did the FAA herein.

82. The FAA illegally compelled the Plaintiff to sign the Consent Agreement, and then, based upon the purported failure of the air carrier to comply with the terms of the contract, cancelled the Plaintiff's air carrier operating certificate.

83. The cancellation of the Plaintiff's certificate was effectively a decertification of the Plaintiff's air carrier certificate.

84. Before the FAA may revoke an air carrier operating certificate, it must comply with the Federal Aviation Regulations which set out a detailed process before a certificate may be cancelled or revoked.

85. The Federal Aviation Regulations require notice and hearing even if the certificate is revoked on an emergency basis. The hearing is adversarial trial type of hearing before neutral Administrative Law Judge from the National Transportation Safety Board.

86. The FAA failed to provide a hearing as required per its own rules and failed or to give any notice or opportunity to be heard as required by the 5th and 14th Amendment to the United States Constitution.

87. In view of Defendant FAA's cancellation of RegionsAir's air carrier operating certificate, there is an actual controversy within the jurisdiction of this court. Declaratory relief will effectively adjudicate the rights of the parties.

88. The cancellation of Plaintiff's air carrier certificate by the FAA will cause Plaintiff undue hardship and irreparable injury.

89. The cancellation of the abovementioned RegionsAir's air carrier certificate resulted from the FAA's purported belief that the Plaintiff failed to comply with its obligations under the aforementioned Consent Agreement.

90. Plaintiff has no other adequate remedy at law.

91. Plaintiff requests this court to restrain Defendant from canceling Plaintiff's air carrier certificate.

92. Pending a final hearing and determination of the court of this matter, a preliminary injunction should be issued restraining Defendant and agents from canceling the Plaintiff's air carrier certificate.

93. The court issue such other and further relief as it may deem necessary and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following:

(1) This court determine the rights and obligations under the terms of the Consent Agreement.

(2) This court enter declaratory judgment determining:

a) the Consent Agreement was signed entered into by Plaintiff under duress; and that the US Government entered into the agreement as a pretense to cancel Plaintiff's air carrier certificate;

b) alternatively that Plaintiff complied with the terms of the Consent Agreement;

c) that Defendant breached the terms of the Consent Agreement;

d) that Defendant failed to follow its own rules and regulations for decertifying an air carrier; and

e) that Defendant violated Plaintiff's constitutional rights by taking Plaintiff's air carrier certificate in violation of Plaintiff's due process rights without just compensation.

(3) Plaintiff requests this court to restrain Defendant from canceling Plaintiff's air carrier certificate.

(4) Pending a final hearing and determination of the court of this matter, a preliminary injunction should be issued restraining Defendant and agents from canceling Plaintiff's air carrier certificate.

(5) The court grant plaintiff such further relief as it in equity may deem fit and proper.

(6) The court find damages against Defendant in the amount of $11,650,000.00 for illegally compelling the Plaintiff to enter into the contract that was a pretense; for wrongful breach or contract; and for taking Plaintiff's property without just compensation.

**Speedy Hearing**

Pursuant to this court's rules (Rule 57) Plaintiff hereby requests that this Court order a speedy evidentiary hearing concerning the above counts for declaratory and injunctive relief. The basis for the speedy trial is founded in the

notion that Plaintiff will lose its entire business as an air carrier operator if its certification remains cancelled for any significant length of time.

Dated this 6th day of August 2007.

Respectfully submitted,

MOULIS & ASSOCIATES, P.A.
*Attorneys for Respondent*
1100 Lee Wagener Boulevard
Suite 315
Fort Lauderdale, Florida 33315
Telephone: (954) 359-3172
Facsimile: (954) 359-3213

By:____________________
Michael Moulis, Esq.
Florida Bar No. 0186790

# Exhibit 1

In the Matter of )
)
REGIONSAIR, INC. )

## CONSENT AGREEMENT

The Federal Aviation Administration (FAA) and RegionsAir, Inc. (RegionsAir) hereby agree to enter into a Consent Agreement (Agreement), the terms and conditions of which are set forth below.

WHEREAS, RegionsAir is the holder of Air Carrier Certificate No. 03XA311J issued under Part 119 of the Federal Aviation Regulations and Operation Specifications issued under Part 121 of the Federal Aviation Regulations, and

WHEREAS, on March 2, 2007, representatives of the FAA Administrator conducted a records inspection of RegionsAir at its main base of operations in Smyrna, Tennessee, and

WHEREAS, the records inspection revealed that nine (9) line check airmen had not received the flight training as required by Section 121.413 of the Federal Aviation Regulations and therefore, were not qualified to administer line checks to RegionsAir pilots, and

WHEREAS, the check airmen referenced above administered line checks to at least 15 pilots (Captains and First Officers) employed by RegionsAir, and

WHEREAS, the pilots (Captains and First Officers) referenced above were used as flight crewmembers on numerous revenue flights between May 2006 and March 2007, and

WHEREAS, as a result, the FAA has legitimate safety concerns as to the qualifications of all pilots employed by RegionsAir, and

WHEREAS, inspections conducted by representatives of the FAA Administrator in September 2006 and March 2007 revealed discrepancies with flight attendant and pilot records, including training records, and

WHEREAS, as a result, the FAA has legitimate safety concerns as to the adequacy and accuracy of flight attendant and pilot records that RegionsAir is required to maintain under the Federal Aviation Regulations, and

In view of the foregoing, the FAA and RegionsAir agree as follows:

1. RegionsAir voluntarily agrees to cease any operations for which an air carrier certificate is required.

2. RegionsAir agrees, immediately upon execution of this Agreement, to surrender its air carrier certificate to the Manager of the Nashville Flight Standards District Office (FSDO) for custodial purposes.

3. RegionsAir agrees that it will not resume operations for compensation or hire and that its air carrier certificate will remain in the custody of the FAA's Nashville FSDO until such time as RegionsAir demonstrates to the satisfaction of the FAA Administrator that: (a) its pilots are qualified to conduct flights for compensation or hire under Part 121; (b) RegionsAir pilots designated or authorized as line check airmen are qualified to administer line checks to other company pilots; and (c) that it meets all other regulatory requirements to operate as an air carrier conducting operations under Part 121 of the Federal Aviation Regulations. Once the FAA Administrator is so satisfied, the air carrier certificate will be returned promptly to RegionsAir.

4. RegionsAir agrees and acknowledges that in the event it fails to demonstrate, within 120 days of the date of this Agreement, that: (a) its pilots are qualified to conduct operations under Part 121; and (b) it meets all other regulatory requirements under Part 121, the FAA will cancel its air carrier certificate.

5. The FAA will cooperate with RegionsAir during the period required for RegionsAir to demonstrate its compliance with paragraph 3 above and will assign sufficient resources (Inspectors, other support personnel) necessary to do so within the specified 120 day period.

6. The FAA and RegionsAir agree that in the event that the FAA cancels RegionAir's air carrier certificate as described in paragraph 6 above, the FAA will not issue RegionsAir a new air carrier certificate unless RegionsAir reapplies and meets the initial certification standards required to obtain an air carrier certificate issued under Part 119 of the Federal Aviation Regulations and appropriate operations specifications issued under Part 121 of the Federal Aviation Regulations.

7. The date of this Agreement shall be the date of the last signature hereto.

8. RegionsAir and the FAA agree that they each shall bear their own attorney and expert witness/personnel fees, expenses, and other costs associated with this Agreement.

9. RegionsAir agrees that neither it nor its successors or assigns will commence or pursue any civil, criminal, or administrative action or claim, including an

application for attorney fees and other expenses under the Equal Access to Justice Act, against the FAA or any of its officers or employees or former officers or employees, in connection with the subject matters of this Agreement.

10 By signing this Consent Agreement, RegionsAir attests that: (a) it understands the provisions contained herein; (b) the signature of its representative is voluntary and free of coercion or duress by the FAA and its representative; and (c) the representative signing this Agreement is duly authorized to do so.

For RegionsAir:

DOUGLAS J. CALDWELL
President

Date: 3/9/07

For the FAA:

EDDIE L. THOMAS
Regional Counsel
FAA, Southern Region

Date: ____________

In the Matter of )
)
REGIONSAIR, INC. )

## CONSENT AGREEMENT

The Federal Aviation Administration (FAA) and RegionsAir, Inc. (RegionsAir) hereby agree to enter into a Consent Agreement (Agreement), the terms and conditions of which are set forth below.

WHEREAS, RegionsAir is the holder of Air Carrier Certificate No. 03XA311J issued under Part 119 of the Federal Aviation Regulations and Operation Specifications issued under Part 121 of the Federal Aviation Regulations, and

WHEREAS, on March 2, 2007, representatives of the FAA Administrator conducted a records inspection of RegionsAir at its main base of operations in Smyrna, Tennessee, and

WHEREAS, the records inspection revealed that nine (9) line check airmen had not received the flight training as required by Section 121.413 of the Federal Aviation Regulations and therefore, were not qualified to administer line checks to RegionsAir pilots, and

WHEREAS, the check airmen referenced above administered line checks to at least 15 pilots (Captains and First Officers) employed by RegionsAir, and

WHEREAS, the pilots (Captains and First Officers) referenced above were used as flight crewmembers on numerous revenue flights between May 2006 and March 2007, and

WHEREAS, as a result, the FAA has legitimate safety concerns as to the qualifications of all pilots employed by RegionsAir, and

WHEREAS, inspections conducted by representatives of the FAA Administrator in September 2006 and March 2007 revealed discrepancies with flight attendant and pilot records, including training records, and

WHEREAS, as a result, the FAA has legitimate safety concerns as to the adequacy and accuracy of flight attendant and pilot records that RegionsAir is required to maintain under the Federal Aviation Regulations, and

In view of the foregoing, the FAA and RegionsAir agree as follows:

1. RegionsAir voluntarily agrees to cease any operations for which an air carrier certificate is required.

2. RegionsAir agrees, immediately upon execution of this Agreement, to surrender its air carrier certificate to the Manager of the Nashville Flight Standards District Office (FSDO) for custodial purposes.

3. RegionsAir agrees that it will not resume operations for compensation or hire and that its air carrier certificate will remain in the custody of the FAA's Nashville FSDO until such time as RegionsAir demonstrates to the satisfaction of the FAA Administrator that: (a) its pilots are qualified to conduct flights for compensation or hire under Part 121; (b) RegionsAir pilots designated or authorized as line check airmen are qualified to administer line checks to other company pilots; and (c) that it meets all other regulatory requirements to operate as an air carrier conducting operations under Part 121 of the Federal Aviation Regulations. Once the FAA Administrator is so satisfied, the air carrier certificate will be returned promptly to RegionsAir.

4. RegionsAir agrees and acknowledges that in the event it fails to demonstrate, within 120 days of the date of this Agreement, that: (a) its pilots are qualified to conduct operations under Part 121; and (b) it meets all other regulatory requirements under Part 121, the FAA will cancel its air carrier certificate.

5. The FAA will cooperate with RegionsAir during the period required for RegionsAir to demonstrate its compliance with paragraph 3 above and will assign sufficient resources (Inspectors, other support personnel) necessary to do so within the specified 120 day period.

6. The FAA and RegionsAir agree that in the event that the FAA cancels RegionAir's air carrier certificate as described in paragraph 6 above, the FAA will not issue RegionsAir a new air carrier certificate unless RegionsAir reapplies and meets the initial certification standards required to obtain an air carrier certificate issued under Part 119 of the Federal Aviation Regulations and appropriate operations specifications issued under Part 121 of the Federal Aviation Regulations.

7. The date of this Agreement shall be the date of the last signature hereto.

8. RegionsAir and the FAA agree that they each shall bear their own attorney and expert witness/personnel fees, expenses, and other costs associated with this Agreement.

9 RegionsAir agrees that neither it nor its successors or assigns will commence or pursue any civil, criminal, or administrative action or claim, including an

application for attorney fees and other expenses under the Equal Access to Justice Act, against the FAA or any of its officers or employees or former officers or employees, in connection with the subject matters of this Agreement.

10 By signing this Consent Agreement, RegionsAir attests that: (a) it understands the provisions contained herein; (b) the signature of its representative is voluntary and free of coercion or duress by the FAA and its representative; and (c) the representative signing this Agreement is duly authorized to do so.

For RegionsAir:

DOUGLAS J. CALDWELL
President

Date: 3/9/07

For the FAA:

EDDIE L. THOMAS
Regional Counsel
FAA, Southern Region

Date: ______

# Exhibit 2

U.S. Department of Transportation
**Federal Aviation Administration**

Flight Standards District Office

2 International Plaza
Suite 700
Nashville, Tennessee 37217
(615) 324-1300, Fax: (615) 324-1360

July 10, 2007

Mr. Robert K. Creighton
Agent for Service
RegionsAir, Inc.
693 Fitzhugh Blvd.
Smryna, Tennessee 37167

Dear Mr. Creighton:

The Federal Aviation Administration (FAA) has reviewed RegionsAir, Inc.'s (RegionsAir) request for a sixty day extension to the Consent Agreement it entered into with the FAA on March 9, 2007. This agreement stipulated that the company had 120 days to meet all regulatory requirements to operate as an air carrier under Part 121 of the Federal Aviation Regulations (FAR) or the FAA would cancel its Air Carrier certificate. The FAA review revealed RegionsAir no longer employs any pilots, any dispatchers, any mechanics, or other personnel required to operate an airline. Without these required personnel, RegionsAir is much further from being in compliance with the regulatory requirements of FAR, Part 121 than when entering into the Consent Agreement.

Due to these circumstances an extension to the Consent Agreement will not be authorized and in accordance with the terms of the Consent Agreement, RegionsAir's Air Carrier certificate was canceled today. If in your capacity as the CEO, of Southland Holdings Corp., you desire to seek certification as a FAR, Part 121 Air Carrier, the FAA will be pleased to assist you in doing so. If you have any questions on pursuing a new certification, please feel free to contact me.

Sincerely,

Walter H Bevan

Walter H. Bevan
Manager

cc: Richard Story