**No. 07-594C**
**(Judge Williams)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**REGIONSAIR, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION TO DISMISS

---

**JEFFREY S. BUCHOLTZ**
**Acting Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**OF COUNSEL:**

**MARK A. TOMICICH**
**Federal Aviation Administration**
**Office of Chief Counsel**

**MARK A. MELNICK**
**Assistant Director**

**SCOTT D. AUSTIN**
**Senior Trial Counsel**
**U.S. Department of Justice**
**Civil Division**
**Commercial Litigation Branch**
**1100 L St., N.W.**
**ATTN: Classification Unit**
**8th Floor**
**Washington, D.C. 20530**
**Telephone: (202) 616-0317**
**Facsimile: (202) 305-7643**

**Electronically filed,**
**March 17, 2008**

**Attorneys For Defendant**

# TABLE OF CONTENTS

**PAGE**

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS . . . . . . . . 5

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A. The United States Court Of Federal Claims Is A Court Of Limited Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B. RCFC 12(b) Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II. RegionsAir's Complaint Should Be Dismissed For Lack Of Jurisdiction . . . . . 13

A. Section 1491(b)(2) Of Title 28 Of The United States Code Does Not Confer Upon The Court Jurisdiction To Entertain Any Of RegionsAir's Claims Because This Case Is Not A Bid Protest . . . . . . . . 13

B. Section 1491(a)(1) Of Title 28 Of The United States Code Does Not Provide The Court With Jurisdiction To Entertain Plaintiff's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1. The United States Court Of Appeals Has Exclusive Jurisdiction To Entertain RegionsAir's Request For Relief From The FAA's July 10, 2007 Cancellation Of Its Air Carrier Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

a. 49 U.S.C. § 46110(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

b. Section 1491(a)(1) Does Not Provide This Court With Jurisdiction When The Court Of Appeals Has Exclusive Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . 18

c. Mr. Bevan's July 10, 2007 Letter Is A Final Order Of The FAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

2. The Court Also Lacks Jurisdiction To Entertain RegionsAir's Contract Claims Because The Government Entered The Purported Contract In Its Sovereign Capacity . . . . . . . . . . . . . . . 23

a. The FAA Was Operating In Its Sovereign Capacity . . . . 23

b. The Consent Agreement Does Not Provide That The Government Is Subject To Monetary Liability For A Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3. This Court Lacks Jurisdiction Under Section 1491(a)(1) To Entertain RegionsAir's Taking Claim Because RegionsAir Seeks Declaratory And Injunctive Relief . . . . . . . . . . . . . . . . . . 28

4. The Court Lacks Jurisdiction To Entertain Due Process Claims . 29

III. RegionsAir's Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . 30

A. RegionsAir's Contract Claims Fail To State A Claim Upon Which Relief Can Be Granted Because The Consent Agreement Does Not Constitute A Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

B. RegionsAir's Taking Claim Fails As A Matter Of Law Because It Is Based Upon Purported Illegal And Unauthorized Acts Of The FAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**


Acadia Tech., Inc. v. United States,
458 F.3d 1327 (Fed. Cir. 2006) . . . . . 4, 34

Adell Broadcasting Corp. v. Cablevision Industries,
854 F. Supp. 1280 (E.D. Mich. 1994) . . . . . 31

Aerolineas Argentinas v. United States,
31 Fed. Cl. 25 (1994), rev'd on other grounds,
77 F.3d 1564 (Fed. Cir. 1996) . . . . . 23, 24

Aeromar, C. Por A. v. Dep't of Trans.,
767 F.2d 1491 (11th Cir. 1985) . . . . . 21, 22

Allegre Villa v. United States,
60 Fed. Cl. 11 (2004) . . . . . 24

Allen v. United States,
100 F.3d 133 (Fed. Cir. 1996) . . . . . 4, 30, 31, 33

Americopters, LLC v. FAA,
441 F.3d 726 (9th Cir. 2006) . . . . . passim

Amerikohl Mining, Inc. v. United States,
899 F.2d 1210 (Fed. Cir. 1990) . . . . . 21

Atorie Air, Inc. v. FAA,
942 F.2d 954 (5th Cir. 1991) . . . . . 16, 17, 22

Aviation Contractor Employees, Inc. v. United States,
945 F.2d 1568 (Fed. Cir. 1991) . . . . . 31

Awad v. United States,
61 Fed. Cl. 281 (2004) . . . . . 24, 25

Bailey v. United States,
54 Fed. Cl. 459 (2002) . . . . . 25

Bivens v. Six Unknown Named Agents of Fed'l Bur. Of Narcotics,
403 U.S. 388 (1971) . . . . . 18, 19

Bloemker v. United States,
229 Ct. Cl. 690, 692-93 (1981) . . . . . . . . . . 24

Bounds v. United States,
1 Cl. Ct. 215, 216, aff'd, 723 F.2d 68 (Fed. Cir. 1983) . . . . . . . . . . 29

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . 4, 31

Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,
333 U.S. 103 (1948) . . . . . . . . . . 22

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 12

Crist v. Leippe,
138 F.3d 801 (9th Cir. 1998) . . . . . . . . . . 18

D & N Bank ,
331 F.3d 1374 (Fed. Cir. 2003) . . . . . . . . . . 26, 30, 33

Doe v. United States,
37 Fed. Cl. 74 (1996) . . . . . . . . . . 23

Drakes v. United States,
28 Fed. Cl. 190 (1993) . . . . . . . . . . 25

Durieko v. United States,
209 F.3d 1345 (Fed. Cir. 2000) . . . . . . . . . . 34

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, 428, aff'd mem., 758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . 11

Edelmann v. United States,
76 Fed. Cl. 376 (2007) . . . . . . . . . . 11, 12, 15, 23

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . 11

Figueroa v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . 12

First Fed. Lincoln Bank v. United States,
___ F.3d ___, 2008 WL 590874 (Fed. Cir. March 5, 2008) . . . . . . . . . . 26, 33

First Hartford Corp. v. United States,
194 F.3d 1279 (Fed. Cir. 1999) . . . . . . . . . . 14, 29

Folden v. United States,
379 F.3d 1344 (Fed. Cir. 2004) . . . . . . . . . . 21

Gaunce v. deVincentis,
708 F.2d 1290 (7th Cir. 1983) . . . . . . . . . . passim

Getty Oil Co. V. Ruckelshaus,
467 F.2d 349 (3d Cir. 1972) . . . . . . . . . . 21

Green v. Brantley,
981 F.2d 514 (11th Cir. 1993) . . . . . . . . . . passim

Grundy v. United States,
2 Cl. Ct. 596 (1983) . . . . . . . . . . 25

Heagy v. United States,
12 Cl. Ct. 694, 698 (1987) . . . . . . . . . . 4, 29

Horowitz v. United States,
267 U.S. 458 (1925) . . . . . . . . . . 24

J & L Janitorial Serv. Inc. v. United States,
231 Ct. Cl. 837 (1982) . . . . . . . . . . 29

Kania, v. United States,
227 Ct. Cl. 458, 650 F.2d 264 (1981) . . . . . . . . . . passim

Lewis v. United States,
70 F.3d 597 (Fed. Cir. 1995) . . . . . . . . . . 30

Lion Raisins, Inc. v. United States,
416 F.3d 1356 (Fed. Cir. 2005) . . . . . . . . . . 34

Montalvo v. United States,
231 Ct. Cl. 980 (1982) . . . . . . . . . . 29

Mosowy v. United States,
966 F.2d 668 (Fed. Cir. 1992) . . . . . . . . . . 12

Myers v. Bethlehem Shipbuilding Corp.,
303 U.S. 41 (1938) . . . . . . . . . . 18

National Micrographics Systems, Inc. v. United States,
38 Fed. Cl. 46 (1997) . . . . . . . . . . 31

New Era Constr. v. United States,
890 F.2d 1152 (Fed. Cir. 1989) . . . . . . . . . . 33

New York Life Ins. Co. v. United States,
118 F.3d 1553 (Fed. Cir. 1997) . . . . . . . . . . 14, 15

Oling v. Air Line Pilots Ass'n,
346 F.2d 270 (7th Cir. 1965) . . . . . . . . . . 18

Pappas v. United States,
66 Fed. Cl. 1 (2005) . . . . . . . . . . 25

Phaidin v. United States,
28 Fed. Cl. 231 (1993) . . . . . . . . . . 11

Portsmouth Harbor Land & Hotel Co. v. United States,
260 U.S. 327 (1922) . . . . . . . . . . 34

Puget Sound Traffic Ass'n v. CAB,
536 F.2d 437 (D.C. Cir. 1976) . . . . . . . . . . 22

Regional Rail Reorganization Act Cases,
419 U.S. 102 (1974) . . . . . . . . . . 34

Rith Energy, Inc. v. United States,
247 F.3d 1355 (Fed. Cir. 2001) . . . . . . . . . . 34

Rocovich v. United States,
933 F.2d 991 (Fed. Cir. 1991) . . . . . . . . . . 12

Ruttenberg v. United States,
65 Fed. Cl. 43 (2005) . . . . . . . . . . 14, 29

S, Cal. Fed. Sav. & Loan Ass'n v. United States,
422 F.3d 1319 (Fed. Cir. 2005) . . . . . . . . . . 4, 31

Sadeghi v. United States,
46 Fed. Cl. 660 (2000) . . . . . . . . . . 25

Sanders v. United States,
252 F.3d 1329 (Fed. Cir. 2001) . . . . . . . . . . 12, 23, 27, 28

Silva v. United States,
51 Fed. Cl. 374 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Southern Cal. Aerial Advertisers' Assn v. FAA,
881 F.2d 672 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Tabb Lakes, Ltd. V. United States,
10 F.3d 796 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Trudeau v. United States,
68 Fed. Cl. 121 (2005), aff'd, 186 Fed. Appx. 998 (2006),
cert. denied, 127 S. Ct. 1836 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 29

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.,
379 U.S. 411 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATUTES AND REGULATIONS

5 U.S.C. § 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1491(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1491(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1491(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 14

28 U.S.C. § 1492(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

47 U.S.C. § 402(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

49 U.S.C. § 1429(a) . . . . . . . . . . 17

49 U.S.C. § 1486 . . . . . . . . . . 16

49 U.S.C. §§ 40101 et. seq . . . . . . . . . . 7, 16, 25

49 U.S.C. § 40113(a) . . . . . . . . . . 7, 25

49 U.S.C. §§ 44701 et. seq . . . . . . . . . . 7

49 U.S.C. § 44702(a) . . . . . . . . . . 17

49 U.S.C. § 44709(b) . . . . . . . . . . 17, 25, 32

49 U.S.C. § 44709(b)(1)(A) . . . . . . . . . . 32

49 U.S.C. § 44709(e)(2) . . . . . . . . . . 32

49 U.S.C. § 46105(c) . . . . . . . . . . 32

49 U.S.C. § 46105(c)(2) . . . . . . . . . . 32

49 U.S.C. § 46110(a) . . . . . . . . . . passim

49 U.S.C § 46110 (c) . . . . . . . . . . 16

14 C.F.R. §§ 119.1 . . . . . . . . . . 33

14 C.F.R. §§ 119.59 . . . . . . . . . . 33

14 C.F.R. § 119.61(a)(2) . . . . . . . . . . 33

14 C.F.R. §§ 121.381 - 121.459 (Subparts, M, N, O) . . . . . . . . . . 33

14 C.F.R. §§ 121.410 . . . . . . . . . . 33

14 C.F.R. §§ 121.411 . . . . . . . . . . 33

14 C.F.R. §§ 121.412 . . . . . . . . . . 33

14 C.F.R. §§ 121.413 . . . . . . . . . . 33

14 C.F.R. § 121.414 . . . . . . . . . . 33

14 C.F.R. §§ 121.433 . . . . . . . . . . 33

14 C.F.R. §§ 121.437 . . . . . . . . . . 33

14 C.F.R. §§ 121.438 . . . . . . . . . . 33

14 C.F.R. §§ 121.439 . . . . . . . . . . 33

14 C.F.R. §§ 121.440 . . . . . . . . . . 33

14 C.F.R. §§ 121.441 . . . . . . . . . . 33

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REGIONSAIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-594C |
| | ) | (Judge Williams) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Defendant, the United States, respectfully requests that the Court dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of jurisdiction, or, alternatively, for failure to state a claim upon which relief can be granted.

Plaintiff, RegionsAir, Inc. ("RegionsAir") alleges that, on or about March 9, 2007, following an inspection by the Federal Aviation Administration ("FAA"), it signed a consent agreement with the FAA in which RegionsAir agreed: (1) to cease its operations until it could demonstrate to the FAA that its pilots were qualified, its check airmen were qualified to administer line checks, and it was otherwise in compliance with applicable FAA regulations; and (2) that, if it did not demonstrate that it was meeting these regulatory requirements within 120 days, the FAA would cancel its air carrier certificate. Complaint ("Compl.") ¶¶ 26-27, 54; see Compl., Exhibit 1. RegionsAir further alleges that, on July 10, 2007, the FAA cancelled its air carrier certificate based upon the agency's conclusion that RegionsAir had failed to comply with its obligations under the consent agreement. Compl. ¶29; see Compl., Exhibit 2.

RegionsAir claims that the United States is liable for breach of contract (Counts 1-3), and for an illegal taking under the Fifth Amendment to the Constitution (Count 4), as a result of the

FAA's cancellation of plaintiff's air carrier certificate. E.g., Compl. ¶¶ 49, 58, 71-72, 75, 83. Specifically, in Count 1, RegionsAir alleges that the FAA forced it to enter into the consent agreement under duress. Compl. ¶¶ 44-45. In Count 2, RegionsAir alleges that it complied with its obligations under the consent agreement, but that the FAA cancelled its air carrier certificate despite that compliance. Id. at ¶¶ 56, 58. In Count 3, RegionsAir alleges that the FAA cancelled its air carrier certificate without committing the necessary resources (inspectors and support personnel) to determine whether RegionsAir was in compliance with its obligations under the consent agreement. Id. at ¶¶ 68-69. Finally, in Count 4, RegionsAir contends that the FAA, illegally and without authority, took its property, in violation of the Fifth Amendment, when it compelled it to sign the consent agreement and then proceeded to cancel its air carrier certificate without due process as required by FAA rules and the Fifth and Fourteenth Amendments to the Constitution. Compl. ¶¶ 81-86.

RegionsAir's claims should be dismissed because the Court lacks jurisdiction to entertain them. Alternatively, RegionsAir's contract claims should be dismissed for failure to state a claim upon which relief can be granted.

RegionsAir erroneously claims that two provisions of The Tucker Act, 28 U.S.C. §§ 1491(b)(2) and 1491(a)(1), provide the Court with jurisdiction. Compl. ¶ 10.

Section 1491(b)(2) only provides jurisdiction in this Court for "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." See 28 U.S.C. § 1491(b)(1). The claims in RegionsAir's complaint clearly do not fall within this definition. This is not a bid

protest case: RegionsAir's claims have nothing to do with solicitations for bids or proposals, contract awards, or procurement.

Section 1491(a)(1) of the Tucker Act also does not provide the Court with jurisdiction to entertain plaintiff's claims. Congress has provided "the United States Court of Appeals for the District of Columbia" or "the court of appeals for the circuit in which [RegionsAir] resides or [has] its principal place of business" with exclusive jurisdiction to review the FAA's administrative action canceling RegionsAir's air carrier certificate. 49 U.S.C. § 46110(a). Because the court of appeals has exclusive jurisdiction, the Court of Federal Claims lacks jurisdiction to entertain any of RegionsAir's claims.

Additionally, with respect to RegionsAir's contract claims (Counts 1-3), this Court also lacks jurisdiction under section 1491(a)(1) because the FAA entered into the consent agreement in its sovereign capacity as RegionsAir's regulator and not in a proprietary capacity. See Kania v. United States, 227 Ct. Cl. 458, 650 F.2d 264, 268 (1981); Trudeau v. United States, 68 Fed. Cl. 121, 127 (2005), aff'd, 186 Fed. Appx. 998 (2006), cert. denied, 127 S. Ct. 1836 (2007) ("The jurisdiction of the Court of Federal Claims does not extend to contracts entered into by the Government in its sovereign capacity that do not unmistakably subject the United States to damages in the event of breach.").

This Court also does not possess jurisdiction under Section 1491(a) to entertain RegionsAir's taking claim (Count 4) because RegionsAir seeks declaratory and injunctive relief restraining the Government from cancelling its air carrier certificate. Compl., ¶¶ 79, 91-92. The Court does not possess jurisdiction to provide relief other than money damages. Moreover, to the extent RegionsAir claims its due process rights were violated, it is well-settled that this Court

lacks jurisdiction to review actions under the Due Process or Equal Protection Clauses of the Fifth and Fourteenth Amendments. Heagy v. United States, 12 Cl. Ct. 694, 698 (1987).

Finally, even if the Court concludes it possesses jurisdiction, RegionsAir's contract and constitutional claims should be dismissed for failure to state a claim upon which relief can be granted. In order to demonstrate the existence of a contract, RegionsAir must demonstrate that it provided consideration to the Government in the consent agreement. RegionsAir cannot satisfy this burden. RegionsAir provided the Government with no consideration inasmuch as it agreed only to: (1) take action on certain safety matters, such as ceasing its operations, which the FAA had authority to compel RegionsAir to do without its consent; and (2) comply with regulatory requirements for which it had a pre-existing legal duty to comply.[1] With respect to RegionsAir's constitutional claim, RegionsAir has premised its taking claim upon purported illegal and unauthorized actions by the FAA. However, to constitute a valid cause of action, a taking claim must be based upon authorized, legal government conduct. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006).

We respectfully submit that the Court should dismiss RegionsAir's claims for the reasons set forth in the following memorandum.

---

[1] The Federal Circuit has specifically held that, when a plaintiff fails to demonstrate that consideration was provided resulting in a finding that there is no contract, the plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. Allen v. United States, 100 F.3d 133, 134-35 (Fed. Cir. 1996). However, the Federal Circuit has also held that, when no contract exists because the plaintiff lacks standing, this Court lacks jurisdiction. S, Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 n. 3 (Fed. Cir. 2005); Castle v. United States, 301 F.3d 1328, 1337 (Fed. Cir. 2002). Since both a lack of consideration and a lack of standing result in the absence of a contract, this Court may conclude that the absence of consideration here, pursuant to S. Cal. Fed. and Castle, mandates the conclusion that the Court does not possess jurisdiction.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**QUESTIONS PRESENTED**

1. Whether RegionsAir's complaint should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction because, pursuant to 28 U.S.C. § 1492(b)(2), it does not object to "a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of a contract or [allege the] violation of [a] statute or regulation in connection with a procurement or a proposed procurement?"

2. Whether RegionsAir's complaint should be dismissed pursuant to RCFC 12(b)(1) because the court of appeals has exclusive jurisdiction to entertain RegionsAir's claims pursuant to 49 U.S.C. § 46110(a)?

3. Whether RegionsAir's contract claims should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction because the Government entered into the consent agreement in its sovereign capacity and not in its proprietary capacity?

4. Whether RegionsAir's taking claim should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction because RegionsAir seeks declaratory and injunctive relief?

5. Whether any due process claim asserted by RegionsAir should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction because this Court lacks jurisdiction to entertain such claims?

6. Whether RegionsAir's claims should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted?

## STATEMENT OF THE CASE

### Nature Of The Case

RegionsAir was certified by the FAA to conduct passenger carrying aviation operations. Compl. ¶¶ 8-9, 11-12. In March of 2007, an FAA inspection revealed numerous violations of FAA safety regulations, and the FAA threatened to use its regulatory authority to issue an emergency suspension of RegionsAir air carrier operations. Id. at ¶¶ 17, 20.

As a result of the FAA's inspection, the FAA, in its capacity as RegionsAir's regulator, entered into a consent agreement with RegionsAir in which RegionsAir agreed: (1) to cease its operations until it could demonstrate to the FAA that its pilots were qualified, that its check airmen were qualified to administer line checks, and that it was otherwise in compliance with applicable FAA regulations; and (2) that, if it failed to demonstrate within 120 days that it was meeting these regulatory requirements, the FAA "will cancel its air carrier certificate." Compl., Exhibit 1; ("Compl.") ¶¶ 26-27, 54. The FAA determined, after 120 days had passed, that RegionsAir had failed to demonstrate compliance with the consent agreement and FAA safety regulations. Compl. ¶ 29; Compl., Exhibit 2. The FAA accordingly cancelled RegionsAir's air carrier certificate. Id.

RegionsAir claims that the United States is liable for breach of contract (Counts 1-3) and for an illegal taking under the Fifth Amendment to the Constitution (Count 4) for canceling plaintiff's air carrier certificate. E.g., Compl. ¶¶ 49, 58, 71-72, 75, 83. In Count 1, RegionsAir alleges that the FAA forced it to enter into the consent agreement under duress and utilized the consent agreement as a "mere pretense" to cancel RegionsAir's air carrier certificate. Compl. ¶¶ 44-45. In Count 2, RegionsAir alleges that it complied with its obligations under the consent agreement, but that the FAA cancelled its air carrier certificate despite that compliance. Id. at

¶¶ 56, 58. In Count 3, RegionsAir alleges that the FAA breached the terms of the consent agreement by canceling RegionsAir's air carrier certificate without committing the necessary resources (inspectors and support personnel) to determine whether RegionsAir could demonstrate compliance with its obligations under the consent agreement. Id. at ¶¶ 68-69. Finally, in Count 4, RegionsAir contends that the FAA effectuated a taking of its property, in violation of the Fifth Amendment, because it illegally, and without authority, compelled RegionsAir to sign the consent agreement and proceeded to cancel RegionsAir air carrier certificate without providing a hearing as purportedly required by the FAA's rules and the Fifth and Fourteenth Amendments of the Constitution. Compl. ¶¶ 81-86.

**Statement Of Facts**

We accept RegionsAir's version of the facts for purposes of this motion.

Plaintiff, RegionsAir, is a corporation organized under the laws of Tennessee with its principal place of business located in Smyrna, Tennessee. Compl. ¶ 8.

The FAA is responsible for, and mandated to, regulate and enforce the Federal Aviation Regulations. Compl. ¶ 11; see 49 U.S.C. §§ 40101 et. seq. (Air Commerce and Safety). The FAA is also directed to promote aviation and aviation safety within the public interest. Id.; see 49 U.S.C. §§ 44701 et. seq. (Air Commerce and Safety, Chapter 447); 49 U.S.C § 40113(a). RegionsAir was certified by the FAA to conduct passenger carrying aviation operations throughout the mid-west United States. Compl. ¶¶ 8-9, 11-12.

On or about March 7-8, 2007, numerous FAA inspectors from FAA's regional headquarters inspected plaintiff's airline, including its aircraft, its maintenance program, its pilots operations and records and its operating and training manuals. Compl. ¶ 17. As a result of its inspection, on or about March 9, 2007, the FAA regional inspectors demanded that plaintiff

cease its air carrier operations. Compl. ¶ 18. The FAA inspectors advised RegionsAir that the FAA would issue an emergency suspension of RegionsAir's operating certificate if RegionsAir did not agree to sign a consent agreement. Compl. ¶ 20. As result of the FAA's communications to it, RegionsAir management believed that, if it did not agree to a consent agreement, its air carrier certificate would be revoked immediately. Id.

On March 9, 2007, RegionsAir reached agreement with the FAA and entered into a consent agreement with the FAA. Compl. ¶ ¶ 21, 24; Compl., Exhibit 1. This consent agreement states that, on March 2, 2007, an FAA inspection "revealed that nine (9) line check airmen had not received the flight training as required by Section 121.413 of the Federal Aviation Regulations;" that these unqualified line check airmen administered line checks to at least 15 pilots that were used as flight crewmembers on numerous revenue flights between May 2006 and March 2007; and that "as a result, the FAA has legitimate safety concerns as to the qualifications of all pilots employed by RegionsAir." Compl., Exhibit 1. The consent agreement states that, in September 2006 and March 2007, FAA inspections "revealed discrepancies with flight attendant and pilot records, including training records," and that, as a result, the FAA has "legitimate safety concerns as to the adequacy and accuracy of flight attendant and pilot records that RegionsAir is required to maintain under the Federal Aviation Regulations." Id.

The consent agreement provided that RegionsAir voluntarily agreed to cease any operations for which an air carrier certificate is required. Compl., Exhibit 1, ¶ 1; see Compl. ¶ 25. The consent agreement further provided that RegionsAir would surrender its air carrier certificate to the FAA and that the air carrier certificate would remain in the FAA's custody:

> until such time as RegionsAir demonstrates to the satisfaction of the FAA Administrator that: (a) its pilots are qualified to conduct flights for compensation or hire under Part 121; (b) RegionsAir pilots designated or authorized as line check airmen are qualified to administer line checks to other company pilots; and (c) that it meets all other regulatory requirements to operate as an air carrier conducting operations under Part 121 of the Federal Aviation Regulations. Once the FAA Administrator is so satisfied, the air carrier certificate will be returned promptly to RegionsAir.

Compl., Exhibit 1, ¶¶ 2-3; see Compl. ¶ 25. The consent agreement also provided that, in the event RegionsAir fails to demonstrate within 120 days that its pilots are qualified to conduct operations and that the airline meets all other regulatory requirements under Part 121, the FAA "will cancel its air certificate." Compl., Exhibit 1 ¶ 4; see Compl. ¶ 26.

The FAA agreed in the consent agreement to "cooperate with RegionsAir" during the period RegionsAir was required to demonstrate its compliance and to assign a sufficient amount of resources (inspectors, other support personnel) to determine whether RegionsAir has demonstrated its compliance. Compl., Exhibit 1, ¶ 5; see Compl. ¶¶ 30, 33, 68.

On July 10, 2007, in a letter issued by Walter Bevan, Manager of the FAA's Flight Standards District Office in Nashville, Tennessee, to RegionsAir's designated agent, the FAA cancelled RegionsAir's air carrier certificate. Compl. ¶ 29. In cancelling RegionsAir's certificate, the FAA stated that:

> This [consent] agreement stipulated that the company had 120 days to meet all regulatory requirements to operate as an air carrier under Part 121 of the Federal Aviation Regulations (FAR) or the FAA would cancel its Air Carrier Certificate. The FAA review revealed RegionsAir no longer employs any pilots, any dispatchers, any mechanics, or other personnel required to operate an airline. Without these required personnel, RegionsAir is much further from being in compliance with the regulatory requirements of FAR, Part 121 than when entering into the Consent Agreement.

Compl., Exhibit 2; see Compl. ¶ 29. Mr. Bevan further stated in his July 10, 2007 letter that RegionsAir's request for a 60-day extension of the 120-day deadline set forth in the consent agreement would not be authorized and that "RegionsAir's Air Carrier certificate was canceled today." Id.

RegionsAir contends in its complaint that, prior to the expiration of 120 days from when it entered the consent agreement, it was in compliance with all of the requirements set forth in applicable FAA regulations and the consent agreement. Compl. ¶¶ 27-28. RegionsAir further contends that the FAA cancelled its air carrier certificate on July 10, 2007 notwithstanding this compliance. Compl. ¶ 29; see Compl., Exhibit 2.

RegionsAir additionally contends that, despite the FAA's agreement in the consent agreement to assign sufficient resources to enable RegionsAir to demonstrate compliance with the consent agreement and applicable FAA regulations, "the FAA failed to commit one inspector to RegionsAir's facility;" it "ignored RegionsAir's attempts to satisfy the terms of the contract;" and "the FAA inspectors [failed] to return phone calls, or respond to written correspondence by RegionsAir." Compl. ¶¶ 30-31. According to RegionsAir, "if" RegionsAir failed to comply with the consent agreement, "it was the direct result of the FAA's failure to commit adequate resources to ensure compliance, or even respond to RegionsAir's attempt to satisfy its obligations pursuant to the Consent Agreement." Compl. ¶ 32.

RegionsAir filed its complaint in this Court on August 6, 2007. The complaint contains four counts. Compl. ¶¶ 42-93. RegionsAir alleges in the complaint that the United States is liable for breach of contract (Counts 1-3) and for an illegal taking under the Fifth Amendment to the Constitution (Count 4) for canceling plaintiff's air carrier certificate. E.g., Compl. ¶¶ 49, 58, 71-72, 75, 83.

To date, RegionsAir has not sought judicial review of the FAA's decision in any Federal court of appeals.

## ARGUMENT

### I. Standard Of Review

#### A. The United States Court Of Federal Claims Is A Court Of Limited Jurisdiction

As is the case with all Federal courts, the Court of Federal Claims is a court of limited jurisdiction. Edelmann v. United States, 76 Fed. Cl. 376, 379 (2007); Phaidin v. United States, 28 Fed. Cl. 231, 233 (1993); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd mem., 758 F.2d 665 (Fed. Cir. 1984). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. Edelmann, 76 Fed. Cl. at 379; see United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). Congressional consent to suit in the Court of Federal Claims, which thereby waives sovereign immunity, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Edelmann, 76 Fed. Cl. at 379. As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983).

Plaintiffs are responsible for setting forth a jurisdictional basis for their claims. RCFC 8(a)(1) (the complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends"); Edelmann v. United States, 76 Fed. Cl. at 379. Plaintiffs bear the burden of proving that this Court possesses jurisdiction to entertain the complaint. Sanders v.

United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001); Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

**B. RCFC 12(b) Motions**

This Court will grant a RCFC 12(b)(6) motion only if its appears beyond doubt that plaintiff has failed to allege facts sufficient to support his claim. Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Mosowy v. United States, 966 F.2d 668, 672 (Fed. Cir. 1992)). For purposes of ruling upon a motion to dismiss, the Court accepts as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. Figueroa, 57 Fed. Cl. at 497. However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss," and "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Id.

## II. <u>RegionsAir's Complaint Should Be Dismissed For Lack Of Jurisdiction</u>

RegionsAir alleges that the Court possesses jurisdiction over its complaint based upon 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1491(b)(2), separate provisions of the Tucker Act. Compl. ¶ 10. However, neither statutory provision provides this Court with jurisdiction to entertain RegionsAir's claims. The complaint should accordingly be dismissed for lack of jurisdiction.

### A. <u>Section 1491(b)(2) Of Title 28 Of The United States Code Does Not Confer Upon The Court Jurisdiction To Entertain Any Of RegionsAir's Claims Because This Case Is Not A Bid Protest</u>

RegionsAir's contention that this Court has jurisdiction to entertain its complaint pursuant to 28 U.S.C. § 1491(b)(2) is wholly without merit because section 1492(b)(2) only applies to bid protests in a procurement context. Counts 1-4 of the complaint are all completely unrelated to any bid protest or procurement action.

Section 1491(b)(2) does *not* provide this Court with jurisdiction to entertain either RegionsAir's three breach of contract claims (Counts 1-3) or its taking claim (Count 4). Section 1491(b)(2) provides that "[t]o afford relief *in such an action*, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." (Emphasis added). The *action* referenced in section 1491(b)(2) is set forth in 28 U.S.C. § 1491(b)(1). Section 1491(b)(1) provides this Court with jurisdiction to render judgment "on an *action* by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." (Emphasis added).

It is beyond dispute that RegionsAir's complaint does not constitute an action objecting to a solicitation for a bid or proposal, to a proposed or actual award of a contract, or to any

alleged statutory or regulatory violation related to a procurement or proposed procurement. Accordingly, section 1491(b)(2) does not provide the Court with jurisdiction to entertain RegionsAir's claims.

Similarly, because section 1491(b)(2) does not provide the Court with jurisdiction, this Court lacks jurisdiction to grant RegionsAir's request (e.g., Compl., ¶¶ 50, 59, 64, 66, 70, 76, 79, 92) for injunctive and declaratory relief.[2] United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"); First Hartford Corp. v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999) (with the exception of the carve out in 28 U.S.C. § 1491(b)(2), the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or declaratory judgment, or specific performance."); Ruttenberg v. United States, 65 Fed. Cl. 43, 50 (2005).

### B. Section 1491(a)(1) Of Title 28 Of The United States Code Does Not Provide The Court With Jurisdiction To Entertain Plaintiff's Claims

Section 1491(a)(1) of the Tucker Act provides the Court of Federal Claims with jurisdiction to entertain claims for money damages against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated

---

[2] RegionsAir erroneously requests a "speedy hearing" for declaratory and injunctive relief pursuant to RCFC 57. Rule 57 only applies: (1) "in the context of procurement protests" pursuant to 28 U.S.C. § 1491(b)(2); and (2) to a declaratory judgment under section 7428 of the Internal Revenue Code ("IRC"). See RCFC 57 Rules Committee Note; 28 U.S.C. § 1507 (referenced in RCFC 57). Neither of these two situations applies here. Plaintiff's claims do not arise "in the context of procurement protests" and are unrelated to a request for declaratory judgment under section 7428 of the IRC. The "speedy hearing" provision of RCFC 57 is accordingly inapplicable.

damages in cases not sounding in tort." See New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555 (Fed. Cir. 1997); Edelmann, 76 Fed. Cl. at 379-80.

Section 1491(a)(1) does not provide this Court with jurisdiction to entertain RegionsAir's claims because: (1) 49 U.S.C. § 46110(a) provides that the United States Court of Appeals for the District of Columbia, or the court of appeals of the United States for the circuit in which the plaintiff resides or has its principal place of business, has exclusive jurisdiction for judicial review of the FAA's final order cancelling RegionsAir's air carrier certificate; (2) contract liability enforceable under the Tucker Act does not extend to the consent agreement[3] because it was entered into by the Government in its sovereign capacity rather than its proprietary capacity; and (3) RegionsAir's seeks declaratory and injunctive relief in its taking claim.

**1. The United States Court Of Appeals Has Exclusive Jurisdiction To Entertain RegionsAir's Request For Relief From The FAA's July 10, 2007 Cancellation Of Its Air Carrier Certificate**

On July 10, 2007, Walter Bevan, the FAA's Manager for the Flight Standards District Office in Nashville, Tennessee, sent a letter to RegionsAir denying RegionsAir's request for a 60-day extension of the 120 days stipulated in the consent agreement for RegionsAir to meet all necessary regulatory requirements to operate as an air carrier. Compl. ¶ 29; Compl., Exhibit 2. The FAA simultaneously ordered that "RegionsAir's Air Carrier certificate was canceled today." Id.

[3] RegionsAir relies upon the March 9, 2007 consent agreement (attached to the complaint as Exhibit 1), as constituting a contract providing this Court with jurisdiction under section 1491(a)(1) to entertain its contract claims (Counts 1-3). See, e.g., Compl. ¶¶ 30-31, 55, 58, 63, 66, 68-70, 82.

It is from this final FAA action – the FAA's cancellation of its air carrier certificate on July 10, 2007 – that RegionsAir seeks relief. See, e.g., Compl. ¶ 7 ("The United States Government illegally cancelled the plaintiff's air carrier certificate . . ."); ¶ 29 (" . . . [O]n July 10, 2007, the FAA cancelled Plaintiff's air carrier certificate under the cloak of purported non-compliance with the aforementioned Consent Agreement."); ¶ ¶ 46, 60, 71, 88 ("The cancellation of Plaintiff's air carrier certificate by the FAA will cause Plaintiff undue hardship and irreparable injury.").

**a. 49 U.S.C. § 46110(a)**

The statute governing judicial review of administrative decisions of the FAA is 49 U.S.C. § 46110(a). Section 46110(a) explicitly provides that, with respect to "an order issued by . . . the Administrator of the Federal Aviation Administration," an adversely affected party "may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals for the circuit in which the party resides or has its principal place of business." 49 U.S.C. § 46110(a).

Numerous courts of appeals have held that section 46110(a), like its predecessor provision, 49 U.S.C. § 1486, provides *exclusive* jurisdiction in the court of appeals for parties seeking review of final FAA orders made pursuant to 49 U.S.C. §§ 40101 et seq. (Air Commerce and Safety). E.g., Americopters, LLC v. FAA, 441 F.3d 726, 736 (9th Cir. 2006); Green v. Brantley, 981 F.2d 514, 518-519 (11th Cir. 1993); Atorie Air, Inc. v. FAA, 942 F.2d 954, 959 (5th Cir. 1991); Gaunce v. deVincentis, 708 F.2d 1290, 1292 & n.4 (7th Cir. 1983); see 49 U.S.C. § 46110(c) (the court of appeals "has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the . . . Administrator to conduct further proceedings").

The exclusive jurisdiction provided for in section 46110(a) applies to orders involving "aviation duties and powers designated to be carried out by the Administrator" under "*this part*, part B, or subsection (l) or subsection (s) of section 114 . . ." 49 U.S.C. § 46110(a) (emphasis added); see Americopters, LLC, 441 F.3d at 735. Mr. Bevan's July 10, 2007 order cancelling RegionsAir's air carrier operating certificate clearly constitutes an order involving "an aviation duty and power" designated to be carried out by the FAA pursuant to "this part" of the statutory scheme.

The statutory provisions authorizing Mr. Bevan's order cancelling RegionAir's air carrier certificate are derived from the same part of the statutory scheme as section 46110(a), Part A of Subtitle VII ("Aviation Programs") of Title 49. Section 44702(a) provides the Administrator with authority to issue air carrier operating certificates, among other forms of certificates. 49 U.S.C. § 44702(a); see Atorie Air, 942 F.2d at 959 n. 1 ("The Federal Aviation Act vests the authority to issue aircraft and air carrier operating certificates in the Secretary of Transportation . . . . Congress has charged the Administrator of the FAA with carrying out these duties.") (citations omitted). Similarly, 49 U.S.C. § 44709(b) provides the Administrator with authority, after deciding that, upon reinspection, reexamination, or other investigation, that safety in air commerce or air transportation and the public interest require that action be taken, to issue an order "amending, modifying, suspending, or revoking," any part of a certificate (including an air carrier operating certificate). See Gaunce, 708 F.2d at 1292 (relying on similar provision from predecessor statute, 49 U.S.C. § 1429(a)). As both sections 44702(a) and 44709(b) are provisions of Part A of subtitle VII of Title 49, both sections are within "this part" of the statutory scheme expressly referenced in section 46110(a).

Exclusive review of the FAA's order cancelling RegionsAir's air carrier operating certificate accordingly lies with the court of appeals.

**b. Section 1491(a)(1) Does Not Provide This Court With Jurisdiction When The Court Of Appeals Has Exclusive Jurisdiction**

Although RegionsAir contends that this Court has jurisdiction to entertain its claims pursuant to section 1491(a)(1), the exclusive jurisdiction of the court of appeals under section 46110(a) cannot be circumvented by claims that are "'inescapably intertwined with a review of the procedures and merits surrounding the FAA's order.'" Americopters, 441 F.3d at 736 (quoting Crist v. Leippe, 138 F.3d 801, 803 (9th Cir. 1998)); Green, 981 F.2d at 520; see Gaunce, 708 F.2d at 1292 n. 3. This rule is based upon "'the well-settled principle that collateral attacks upon administrative orders are not permissible.'" Green, 981 F.2d at 520 (quoting Gaunce, 708 F.2d at 1292-93) (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48-50 (1938)); see 5 U.S.C. § 703. As the courts of appeals have explained, "[w]here Congress has provided a statutory procedure for the review of an administrative order, such procedure is exclusive." Green, 981 F.2d at 520 (quoting Gaunce, 708 F.2d at 1292; Oling v. Air Line Pilots Ass'n, 346 F.2d 270, 276 (7th Cir. 1965)); see Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965).

In Green, the plaintiff unsuccessfully attempted to ignore the exclusive jurisdiction of the court of appeals under section 46110(a) following an FAA action cancelling his designated pilot examiner certificate. The plaintiff in Green filed suit in district court against four FAA officials in their individual capacities, seeking recovery for constitutional torts pursuant to Bivens v. Six Unknown Named Agents of Fed'l Bur. Of Narcotics, 403 U.S. 388 (1971). Green, 981 F.2d at 516, 518. The Eleventh Circuit held that the district court lacked jurisdiction to entertain

Green's "impermissible collateral challenge of the final agency order" because of the exclusive jurisdiction of the court of appeals. Id. at 521. As the court of appeals in Green explained:

> Where Congress has provided in the courts of appeals an exclusive forum for the correction of procedural and substantive administrative errors, a plaintiff may not bypass that forum by suing for damages in district court. . . . The merits of Green's *Bivens* claims are inescapably intertwined with a review of the procedures and merits surrounding the FAA's order.

Id. The Green court relied, in part, upon Gaunce, in which the Seventh Circuit held that the district court lacked jurisdiction to entertain plaintiff's claim that the procedures utilized by the FAA in revoking her airman certificate violated the due process clause of the Fifth Amendment because "'[i]t is clear from the statutory scheme established by Congress that the F.A.A. order was not subject to collateral attack in the district court.'" Green, 981 F.2d at 520 (quoting Gaunce, 708 F.2d at 1293).

Similarly, in Americopters, LLC, the Ninth Circuit noted that, although section 46110(a) does not grant the court of appeals jurisdiction to entertain claims for damages (as opposed to exclusive jurisdiction to "affirm, amend, modify, or set aside any part of the order and [the power to] order the . . . [FAA] Administrator to conduct further hearings"), damages claims asserted in district court that are actually "thinly disguised attempt[s] at an end-run around the jurisdiction limitation imposed by [§ 61110]" must be dismissed for lack of jurisdiction. 441 F.3d at 736 (citation omitted).[4]

[4] Although the court in Americopters, LLC ultimately held that the district court did have jurisdiction, that holding was premised upon a "strange situation" peculiar to that case – there was no pending or live FAA order because the FAA had renounced its earlier orders as having been issued by unauthorized officials. 441 F.3d at 737. The holding from Americopters, LLC that "[a] damages claim in district court is not fairly characterized as an 'end-run' around an order – or the procedures and merits surrounding it – if the order is not longer pending or . . . 'live,'" is accordingly limited to its "strange" facts and is inapposite here. See id.

RegionsAir's claims asserted in this Court are clearly "inescapably intertwined" with a review of the procedures and merits underlying Mr. Bevan's July 10, 2007 order canceling RegionsAir's air carrier certificate. See Americopters, LLC, 441 F.3d at 736; Green, 981 F.2d at 518. Similarly, RegionsAir's decision to file its suit in the Court of Federal Claims, rather than the court of appeals, constitutes a "thinly disguised attempt at an end-run around" the court of appeals' exclusive jurisdiction. See Americopters, LLC, 441 F.3d at 736.

The essence of RegionsAir's contract and constitutional claims is that: (1) the FAA's procedures, and the agency's decision on the merits, that led to Bevan's July 10, 2007 order canceling RegionsAir's air carrier certificate, were improper for various reasons; and, therefore, (2) Mr. Bevan's order should be reversed or invalidated by this Court. E.g., ¶ 44 ("[t]he Consent Agreement was entered into by Plaintiff under duress"); ¶ 58 ("Notwithstanding that RegionsAir had complied with all of its obligations under the Consent Agreement . . . the FAA cancelled Plaintiff's air carrier certificate. . ."); ¶ 69 ("Defendant failed to commit even one inspector to ensure that Plaintiff could comply with the terms of the Consent Agreement"); ¶ 86 ("The FAA failed to provide a hearing as required per its own rules and failed [sic] to give any notice or opportunity to be heard as required by the 5th and 14th Amendment to the United States Constitution."); ¶¶ 49, 75, 91 ("Plaintiff requests this court to restrain Defendant from canceling Plaintiff's air carrier certificate.").

Thus, RegionsAir's claims are "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." Americopters, LLC, 441 F.3d at 736; Green, 981 F.2d

at 521.[5] Accordingly, exclusive jurisdiction lies with the court of appeals under section 46110(a), and this Court lacks jurisdiction.

Although Green, Gaunce, Americopters, LLC and the other cases cited above concerned claims filed by plaintiffs in district court, rather than in the Court of Federal Claims, the principle of law resulting in the district court's lack of jurisdiction applies equally to claims filed in this Court premised upon the Tucker Act. See Folden v. United States, 379 F.3d 1344, 1356, 1359 n. 13 (Fed. Cir. 2004) (Because United States Court of Appeals for the District of Columbia Circuit had exclusive jurisdiction to review final Federal Communications Commission orders pursuant to 47 U.S.C. § 402(b), if that section applies to plaintiff's claims, "it preempts Tucker Act jurisdiction."); see generally Amerikohl Mining, Inc. v. United States, 899 F.2d 1210, 1215 (Fed. Cir. 1990) (Where "'Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word 'exclusive' in the statute providing a forum for judicial review.'") (quoting Getty Oil Co. v. Ruckelshaus, 467 F.2d 349, 356 (3d Cir. 1972).

**c. Mr. Bevan's July 10, 2007 Letter Is A Final Order Of The FAA**

The exclusive jurisdiction of the court of appeals under section 46110(a) "has been judicially restricted to encompass only final FAA orders." Green, 981 F.2d at 519 (quoting Aeromar, C. Por A. v. Dep't of Trans., 767 F.2d 1491, 1492 (11th Cir. 1985). As Mr. Bevan's

[5] Significantly, RegionsAir's specific request for monetary damages is intertwined with the primary remedy it seeks, a restraint upon the FAA from canceling its air carrier certificate. See Compl. at p. 18, Prayer For Relief ¶ 6.

July 10, 2007 letter constitutes a final FAA order, this judicial limitation upon the applicability of section 46110(a) is satisfied here.

FAA orders are not considered to be final and reviewable "'unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" Green, 981 F.2d at 519 (quoting Aeromar C. Por A., 767 F.2d at 1493; Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 112-13 (1948)); see Atorie Air, 942 F.2d at 960; Puget Sound Traffic Ass'n v. CAB, 536 F.2d 437, 439 (D.C. Cir. 1976). As in Green, Mr. Bevan's letter "clearly denies a right or fixes some legal relationship" as a consummation of the administrative process. See 981 F.2d at 519. Indeed, once Mr. Bevan, on July 10, 2007, denied plaintiff's request for an extension of the deadline in the consent agreement and cancelled RegionsAir's air carrier certificate, the FAA, as a consummation of the administrative process, had issued its final decision denying RegionsAir the right to utilize its air carrier certificate. See Atorie Air, 942 F.2d at 960 (FAA refusal to return confiscated certificates constitutes final order); Green, 981 F.2d at 519 (letter advising that designated pilot examiner certificate is withdrawn is final order since it was "the definitive statement on the subject matter it addressed"). Accordingly, Mr. Bevan's letter "possesses the requisite finality" enabling court of appeals review pursuant to section 46110(a). Green, 981 F.2d at 519.

Significantly, it is of no legal import that it was Mr. Bevan, Manager of the FAA's Flight Standards District Office, as opposed to the Administrator of the FAA (or the Secretary of Transportation), who issued the order canceling RegionsAir's air carrier certificate. "'[C]ase law supports the conclusion that [the court of appeals] power to review the Administrator's orders extends to orders issued under the authority of the FAA though not by the Administrator

himself.'" Atorie Air, 942 F.2d at 959 n. 1 (quoting Southern Cal. Aerial Advertisers' Ass'n v. FAA, 881 F.2d 672, 675 (9th Cir. 1989)); see Green, 981 F.2d at 518-19 (termination of designated pilot examiner certificate by manager of FAA's Flight Standards District Office constitutes order providing the court of appeals with exclusive jurisdiction to review the order).

### 2. This Court Also Lacks Jurisdiction To Entertain RegionsAir's Contract Claims Because The Government Entered The Purported Contract In Its Sovereign Capacity

This Court also lacks jurisdiction to entertain RegionsAir's contract claims because the Government entered into the consent agreement in its sovereign capacity, and not in its proprietary capacity.

#### a. The FAA Was Operating In Its Sovereign Capacity

"'[T]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds.'" Sanders, 252 F.3d at 1335 (quoting Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981)); Trudeau v. United States, 68 Fed. Cl. 121, 127 (2005), aff'd, 186 Fed. Appx. 998 (2006), cert. denied, 127 S. Ct. (2007) (quoting Kania); Aerolineas Argentinas v. United States, 31 Fed. Cl. 25, 35 (1994), rev'd on other grounds, 77 F.3d 1564 (Fed. Cir. 1996) (quoting Kania). "The jurisdiction of the Court of Federal Claims does not extend to contracts entered into by the Government in its sovereign capacity that do not unmistakably subject the United States to damages in the event of breach." Trudeau, 68 Fed. Cl. at 127; see Kania, 650 F.2d at 268; Sanders, 252 F.3d at 1335; Edelmann, 76 Fed. Cl. at 381-82. As this Court recently explained:

> The two main categories of contracts that the government makes are often referred to as proprietary and sovereign. See Doe v. United States, 37 Fed. Cl. 74, 77 (1996). The United States generally has waived sovereign immunity with regard to proprietary contracts, which are contracts in which "the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." Kania, 650 F.2d at 268; see also Bloemker v. United States, 229 Ct. Cl. 690, 692-93 (1981). In contrast, the government has not waived sovereign immunity for contracts that it makes in its sovereign, or governmental capacity. See Kania, 650 F.2d at 268.

Awad v. United States, 61 Fed. Cl. 281, 284 (2004); see Trudeau, 68 Fed. Cl. at 127 (quoting Awad); Aerolineas Argentinas, 31 Fed. Cl. at 35 ("'[C]ontracts made by Government officials in the implementation of a sovereign function are not amenable to suit in the Claims Court; on the other hand, contracts made in situations where the Government enters the market place in a proprietary capacity are subject in this court to claims for breach.'") (citation omitted).

The sovereign capacity doctrine is distinct from the sovereign acts doctrine. Trudeau, 68 Fed. Cl. at 123 n.2. The sovereign capacity doctrine, as explained above, provides that this Court lacks jurisdiction over certain contracts that the Government makes in its sovereign capacity. Id. "In contrast, the sovereign acts doctrine is a merits-based affirmative defense under which the United States, when sued as a party to a contract, 'cannot be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as a sovereign.'" Id. (quoting Allegre Villa v. United States, 60 Fed. Cl. 11, 16 (2004) (quoting Horowitz v. United States, 267 U.S. 458, 461 (1925))).

Although Kania arose in a criminal context, 650 F.2d at 266, as did many of the contracts at issue in the Kania line of cases (i.e., pleas agreements, immunity agreements, and witness

protection agreements),[6] this Court has made clear that the sovereign capacity doctrine extends to contracts arising in the civil context. See Trudeau, 68 Fed. Cl. at 127 ("Recent decisions of the Court of Federal Claims have continued to rely upon Kania and its progeny in holding that the relevant distinction is between government contracts entered into in a proprietary or sovereign capacity rather than whether a particular contract arose in a criminal or civil context. See Awad v. United States, 61 Fed. Cl. at 284; Bailey v. United States, 54 Fed. Cl. 459, 482-83 (2002)"). As the Court explained in Trudeau:

> . . . the court in Kania did not draw a "civil/criminal" distinction in deciding whether the Tucker Act waived sovereign immunity for Mr. Kania's claim. Kania, 227 Ct.Cl. 458, 650 F.2d 264. In fact, in applying the sovereign capacity doctrine, the court relied on a principle frequently invoked in civil matters that "[t]he claimant for money damages for breach of an express or implied in fact contract must show that the officer who supposedly made the contract had authority to obligate appropriated funds." Id. at 465, 650 F.2d at 268 (footnote omitted).

68 Fed. Cl. at 128.

There can be little doubt that the Government, through the FAA, was operating in its sovereign capacity as opposed to its proprietary capacity in entering the consent agreement with RegionsAir. The FAA was acting strictly in its capacity as a sovereign regulator of commercial airlines. The Administrator of the FAA (or his designee) has the authority to conduct investigations and procedures, and issue orders, as considered necessary with respect to those aviation safety duties and powers designated to the FAA under 49 U.S.C. §§ 40101 et. seq. (Air Commerce and Safety). 49 U.S.C. § 40113(a). Under 49 U.S.C. § 44709(b), the Administrator

---

[6] See Pappas v. United States, 66 Fed. Cl. 1 (2005); Silva v. United States, 51 Fed. Cl. 374 (2002); Sadeghi v. United States, 46 Fed. Cl. 660 (2000); Drakes v. United States, 28 Fed. Cl. 190 (1993); Grundy v. United States, 2 Cl. Ct. 596 (1983).

(or his designee) is authorized to suspend or revoke certificates if he determines, after reinspection, reexamination, or investigation, that air commerce or air transportation safety concerns and the public interest require that action.

Accordingly, the FAA's action here was taken in the uniquely sovereign capacity of ensuring that public air travel in the United States is safe. The FAA entered into the consent agreement with RegionsAir in pursuit of its regulatory function. See generally First Fed. Lincoln Bank v. United States, ___ F.3d ___, 2008 WL 590874 at * 9 (Fed. Cir. March 5, 2008) ("'An agency's performance of its regulatory or sovereign functions does not create contractual obligations.'") (quoting D & N Bank v. United States, 331 F.3d 1374, 1378-79 (Fed. Cir. 2003)). In contrast, the FAA's action had absolutely nothing to do with the Government acting in its proprietary capacity, i.e., involvement with the "purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." Kania, 650 F.2d at 268.

The consent agreement alleged by RegionsAir to constitute a contract here is analogous to Trudeau. In Trudeau, the Federal Trade Commission ("FTC") agreed to the entry of a stipulated order in connection with the settlement of a civil enforcement action against Mr. Trudeau. 68 Fed. Cl. at 130. The Court found that the FTC's purpose "when it initiated, litigated, and later settled, the enforcement action was clear: to protect the public against deception . . ." Id. The Court concluded that the FTC's action was taken in its sovereign capacity, and not its proprietary capacity, for reasons equally applicable here:

> By agreeing to entry of the Stipulated Order, the FTC vindicated this public interest. In so doing, it plainly did not "step[ ] off the throne and engage [ ] in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." Kania, 227 Ct.Cl.

> at 464, 650 F.2d at 268. The FTC did not receive goods or services in exchange for its agreement to entry of the Stipulated Order, but instead obtained for the public a measure of protection against the dangers of false advertising. The FTC's efforts to obtain this relief, in and for the public interest, were undertaken by the Government in its sovereign, not proprietary, capacity.

Id.

As in Trudeau, the FAA's purpose in entering the consent agreement here "was clear: to protect the public . . ." Id. Moreover, the consent agreement between the FAA and RegionsAir "obtained for the public a measure of protection . . ." Id. Finally, as in Trudeau, the FAA's efforts to obtain the relief it did "in and for the public interest, were undertaken by the Government in its sovereign, not proprietary, capacity." Id.

**b. The Consent Agreement Does Not Provide That The Government Is Subject To Monetary Liability For A Breach**

The fact that the FAA acted in its sovereign capacity is not, however, sufficient, in and of itself, to reach the conclusion that the Court lacks jurisdiction pursuant to Kania and Trudeau. In Kania, the court held that a claim for money damages for the breach of a contract may be maintained in this Court when the Government is operating in its sovereign capacity if there is "specific authority . . . to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined." Sanders, 252 F.3d at 1335 (quoting Kania, 650 F.2d at 268); Trudeau, 68 Fed. Cl. at 130.

In Sanders, the Federal Circuit explained in greater detail what is necessary for a plaintiff to demonstrate jurisdiction in this Court when the Government is operating in its sovereign capacity: "[i]n other words, a claim for money damages for the alleged breach of such an agreement may not be maintained unless that agreement clearly and unmistakably subjects the government to monetary liability for any breach." 252 F.3d at 1335. As the Sanders Court

further explained, the Court's jurisdiction and the Government's potential contractual liability "could exist only if there was an unmistakable promise to subject the United States to monetary liability. This would require the same kind of express language (in both written and oral agreements) required by the unmistakability doctrine concerning government liability for the exercise of sovereign power." Sanders, 252 F.3d at 1336; Trudeau, 68 Fed. Cl. at 130.

It is evident that RegionsAir has not, and cannot, make the requisite showing under Kania, Sanders, and Trudeau sufficient to demonstrate that the Court has jurisdiction notwithstanding that the FAA was operating in its sovereign capacity. The consent agreement contains no promise subjecting the United States to monetary liability for the breach, must less an unmistakable promise. Compl., Exhibit 1. Indeed, the consent agreement is silent as to any liability of the United States should it breach the consent agreement. Id.

Accordingly, because the Government was operating in its sovereign capacity when it entered the consent agreement with RegionsAir, and because the consent agreement does not subject the government to monetary liability for any breach (clearly and unmistakably or otherwise), this Court lacks jurisdiction to entertain RegionsAir's contract claims.

#### 3. This Court Lacks Jurisdiction Under Section 1491(a)(1) To Entertain RegionsAir's Taking Claim Because RegionsAir Seeks Declaratory and Injunctive Relief

In Count 4 of the Complaint, RegionsAir asserts a claim pursuant to the Fifth Amendment for a taking of property without just compensation. Even if 49 U.S.C. § 46110(a) did not provide exclusive jurisdiction to the court of appeals, which it does, this Court would still lack jurisdiction to entertain RegionsAir's taking claim because RegionsAir seeks declaratory and injunctive relief.

In Count 4, RegionsAir alleges that it seeks a declaratory judgment. Compl. ¶ 79. Further, RegionsAir requests in Count 4 a preliminary injunction "restraining Defendant from cancelling the Plaintiff's air carrier certificate." Compl. ¶ 92; see Compl. ¶ 91.

However, this Court lacks jurisdiction to grant RegionsAir's request for injunctive and declaratory relief. King, 395 U.S. at 4 ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"); First Hartford Corp., 194 F.3d at 1294 (the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or declaratory judgment, or specific performance."); Ruttenberg v. United States, 65 Fed. Cl. 43, 50 (2005).

**4. The Court Lacks Jurisdiction To Entertain Due Process Claims**

Although Count 4 of RegionsAir's complaint is captioned as a taking claim, it contains within its four corners an allegation that RegionsAir's due process rights under the Fifth and Fourteenth Amendments were violated. Compl.¶¶ 36, 41, 80, 84-86.

However, even if Count 4 of RegionsAir's complaint is construed to assert a due process claim, the claim fares no better than its taking claim. It is well-settled that this court lacks jurisdiction to review actions under the Due Process or Equal Protection Clauses of the Fifth and Fourteenth Amendments. Heagy v. United States, 12 Cl. Ct. 694, 698 (1987) (citing Montalvo v. United States, 231 Ct. Cl. 980, 982-83 (1982); J & L Janitorial Serv. Inc. v. United States, 231 Ct. Cl. 837, 838 (1982); Bounds v. United States, 1 Cl. Ct. 215, 216, aff'd, 723 F.2d 68 (Fed. Cir. 1983).

Accordingly, any due process claim that RegionsAir is, or might be, asserting must be dismissed for lack of jurisdiction.

## III. RegionsAir's Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted

### A. RegionsAir's Contract Claims Fail To State A Claim Upon Which Relief Can Be Granted Because The Consent Agreement Does Not Constitute A Contract

Even if this Court possesses jurisdiction to entertain RegionsAir's contract claims set forth in Counts 1-3 of the complaint, and it does not for the reasons set forth in Sections II(B)(1) and II(B)(2) above, RegionsAir has failed to state a claim upon which relief can be granted. The consent agreement, upon which RegionsAir relies as the basis for its breach of contract claims (see, e.g., Compl. ¶¶ 30-31, 55, 58, 63, 66, 68-70, 82), is not a contract.

In order to demonstrate the existence of a contract, RegionsAir must demonstrate: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract. D & N Bank , 331 F.3d at 1378; Lewis v. United States, 70 F.3d 597, 600 (Fed. Cir. 1995).

RegionsAir's contention that the consent agreement constitutes a contract fails because of the absence of the third element – consideration. The Government received no consideration from RegionsAir in the consent agreement. As a result, RegionsAir has failed to prove a vital element of its cause of action and has, accordingly, failed to state a claim upon which relief can be granted. See Allen, 100 F.3d at 134-35.[7]

---

[7]The Federal Circuit in Allen specifically held that, when a plaintiff fails to demonstrate that consideration was provided resulting in a finding that no contract exists, the plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. Id. However, the Federal Circuit has also held that, when no contract exists because the plaintiff lacks standing, this Court lacks jurisdiction. S, Cal. Fed.,422 F.3d at 1328 n. 3; Castle, 301 F.3d at 1337. Accordingly, because both a lack of consideration and a lack of standing result in the absence of a contract, this Court may conclude that the absence of consideration here, pursuant to S. Cal. Fed. and Castle, mandates the conclusion that the Court does not possess jurisdiction.

The complaint does not explain what RegionsAir contends constitutes consideration that the Government received from RegionsAir in the consent agreement. RegionsAir does list certain "obligations" RegionsAir accepted in the consent agreement. Compl. ¶¶ 23, 25, 54. Specifically, the complaint reflects that RegionsAir "voluntarily agree[d] to cease any operations for which an air carrier certificate is required " until such time as it demonstrates that its pilots were qualified to conduct flights for compensation or hire under Part 121 of the Federal Aviation Regulations; those RegionsAir pilots designated or authorized as line check airmen are qualified to administer line checks to other company pilots; and it meets all other regulatory requirements under Part 121 of the Federal Aviation Regulations. Compl., Exhibit 1, ¶¶ 1, 2; Compl. ¶¶ 23, 25, 54. Additionally, the complaint reflects that RegionsAir agreed that, in the event it failed within 120 days to fulfill its obligations under the consent agreement to satisfy its requirements under Part 121 of the Federal Aviation Regulations, "the FAA will cancel its air carrier certificate." Compl., Exhibit 1, ¶ 4; Compl. ¶¶ 26, 55.

However, these "obligations" that RegionsAir agreed to under the consent agreement do not constitute contractual consideration provided to the Government because RegionsAir agreed to nothing in the consent agreement that it was not already required to do under the law. It is well-settled that "[p]erformance of a pre-existing legal duty is not consideration." Allen, 100 F.3d at 134; National Micrographics Systems, Inc. v. United States, 38 Fed. Cl. 46, 51 (1997); see Aviation Contractor Employees, Inc. v. United States, 945 F.2d 1568, 1574 (Fed. Cir. 1991); Restatement (Second) of Contracts, § 73; Adell Broadcasting Corp. v. Cablevision Industries, 854 F. Supp. 1280, 1292 n. 9 (E.D. Mich. 1994).

The FAA had "legitimate safety concerns" about RegionsAir's operations. Compl., Exhibit 1, p. 1 ("the FAA ha[d] legitimate safety concerns as to the qualifications of all pilots

employed by RegionsAir . . . [and] the adequacy and accuracy of flight attendant and pilot records that RegionsAir is required to maintain under the Federal Aviation Regulations.”). The applicable regulations, under these circumstances, authorized the FAA to demand that RegionsAir cease its operations. Indeed, as we noted above, under 49 U.S.C. § 44709(b)(1)(A), the FAA Administrator, or his designee, may issue an order suspending or revoking an air carrier operating certificate after a reinspection if the FAA official decides “that safety in air commerce or air transportation and the public interest require that action.” Moreover, the FAA’s order of suspension or revocation “is effective immediately,” if the FAA determines and advises that “an emergency exists and safety in air commerce or air transportation requires the order to be effective immediately.” 49 U.S.C. §§ 44709(e)(2), 46105(c)(2); see 49 U.S.C. § 46105(c); 14 C.F.R. § 119.61(a)(2). The FAA did, in fact, conclude that an emergency suspension was necessary. Compl. ¶ 20.[8]

Accordingly, because of its “legitimate safety concerns,” the FAA did not need RegionsAir’s consent to shut down its airline operations until the safety concerns were resolved. As a result, RegionsAir provided the Government with no contractual consideration when it agreed in the consent agreement to cease its operations until it came into compliance with applicable FAA regulations. The Government was ready to take, and would have taken, precisely the same action that RegionsAir agreed to in the consent agreement.

---

[8] As RegionsAir notes, on or about March 7-8, 2007, numerous FAA inspectors from FAA’s regional headquarters inspected plaintiff’s airline, including its aircraft, its maintenance program, its pilots’ operations and records, and its operating and training manuals. Compl. ¶ 17. On the next day, as a result of its inspection, the FAA demanded that RegionsAir cease its air carrier operations and that, if RegionsAir elected to refuse to sign a consent agreement, the FAA would issue an emergency suspension of RegionsAir’s operations. Compl. ¶¶ 18, 20.

Similarly, RegionsAir's agreement in the consent agreement to come into compliance with FAA safety regulations does not constitute consideration to the Government because, as a certificated regional air carrier conducting passenger carrying operations, see Compl. ¶ 8, RegionsAir was required, prior to the consent agreement, to be in compliance with these regulations and to permit inspections by the FAA at any time or place. See 14 C.F.R. §§ 119.1, 119.59, 121.381 - 121.459 (Subparts, M, N, O). FAA regulations expressly required RegionsAir, among other things, to ensure that it utilized qualified pilots to conduct flights for compensation or hire, e.g., 14 C.F.R. §§ 121.383, 121.433, 121.437, 121.438, 121.439, 121.440, 121.441; that its pilots that were designated or authorized as line check airmen were properly qualified to administer line checks to other RegionsAir pilots, e.g., 14 C.F.R. §§ 121.411, 121.413; and that it complied with all requirements set forth in Part 121 of the FAA regulations. RegionsAir had to comply with these requirements quite apart from any agreement contained in the consent agreement. Accordingly, RegionsAir's agreement to comply with FAA regulations with which it was previously required to comply does not constitute consideration sufficient to characterize the consent agreement as a contract. E.g., Allen, 100 F.3d at 134.

Indeed, in contrast to receiving consideration from RegionsAir in the consent agreement, the FAA's involvement with RegionsAir was solely as its primary regulator. "An agency's performance of its regulatory or sovereign function does not create contractual obligations." First Fed. Lincoln Bank, 2008 WL 590874 at * 9; D & N Bank , 331 F.3d at 1378-79; see New Era Constr. v. United States, 890 F.2d 1152, 1155 (Fed. Cir. 1989).

### B. RegionsAir's Taking Claim Fails As A Matter Of Law Because It Is Based Upon Purported Illegal And Unauthorized Acts Of The FAA

Even assuming this Court possesses jurisdiction to entertain RegionsAir's taking claim set forth in Count 4, which it does not for the reasons we have explained, the claim should be dismissed for failure to state a claim upon which relief can be granted because the taking claim is premised solely upon purported illegal and unauthorized acts of the FAA.

To constitute a valid cause of action, a taking claim must be based upon authorized, legal government conduct. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006); Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1369 (Fed. Cir. 2005); Rith Energy, Inc. v. United States, 247 F.3d 1355, 1365-66 (Fed. Cir. 2001). Accordingly, allegations of a taking based solely upon unauthorized or illegal government acts do not constitute a cognizable claim for a taking. E.g., Regional Rail Reorganization Act Cases, 419 U.S. 102, 126-27 n.16 (1974); Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 330 (1922); Durieko v. United States, 209 F.3d 1345, 1358-59 (Fed. Cir. 2000); Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993).

RegionsAir fails to state a taking claim upon which relief can be granted because it explicitly states that its taking claim is based entirely upon purported illegal and unauthorized acts by the FAA. RegionsAir contends in its "5th Amending Taking" claim, Count 4, that the FAA engaged in "illegal" or unauthorized conduct, resulting in a taking of its property, when the FAA cancelled its air carrier certificate. Compl. ¶¶ 81-86. Specifically, RegionsAir alleges that the FAA: (1) despite lacking authority to do so, entered into a consent agreement which effectively decertified RegionsAir by canceling its air carrier certificate (Compl. ¶¶ 81, 83); (2) "illegally compelled" RegionsAir to sign the consent agreement (Compl. ¶ 82); and (3) failed to

provide RegionsAir with a hearing before an administrative law judge of the National Transportation Board in violation of the FAA's own rules and regulations and the due process requirements of the Fifth and Fourteenth Amendments of the Constitution (Compl. ¶¶ 36, 41, 80, 84-86).

As the entirety of RegionsAir's taking claim is premised upon illegal or unauthorized FAA conduct, RegionsAir has failed to state a claim upon which relief can be granted.

**CONCLUSION**

For the foregoing reasons, we respectfully submit that RegionsAir's complaint, in its entirety, should be dismissed for lack of jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

Of Counsel:

MARK A. TOMICICH
Federal Aviation Administration
Office of Chief Counsel

JEANNE E. DAVIDSON
Director

/s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s/ Scott D. Austin
SCOTT D. AUSTIN
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
ATTN: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-0317
Facsimile: (202) 305-7643

Attorneys for Defendant

Electronically filed,
March 17, 2008

**CERTIFICATE OF FILING**

I hereby certify that on the 17th day of March, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS**"** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Scott D. Austin